IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHANEL ADAVENAIXX, Individually And On Behalf Of All Others Similarly Situated,<br>   1205 Nevada Sky Street<br>   Las Vegas, NV 89128<br><br>                    Plaintiff,<br><br>              v.<br><br>HOWARD UNIVERSITY,<br>   2400 6th Street Nw<br>   Washington, D.C. 20059<br><br>                    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chanel Adavenaixx ("Plaintiff"), by and through undersigned counsel, brings this action against Howard University ("Defendant" or "Howard University"), on behalf of herself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

**NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS**

1.    This is a class action for breach of contract, unjust enrichment, conversion, and violation of the District of Columbia Consumer Protection Procedures Act (CPPA) under § 28-3904(a), against Defendant.

2.    Specifically, as set forth more fully below, Plaintiff and the putative Class members contracted with Defendant for certain services and paid for those services in the form of tuition and fees for numerous items including room and board.  As a result of limitations Defendant has imposed, Defendant has not delivered the services that Plaintiff and the putative Class members contracted and paid for.

3. As a result, Plaintiff and the putative Class members are entitled to a refund on tuition and fees paid for services, facilities, access, and/or opportunities not delivered.

4. Defendant is a private, federally-chartered, historically black university in Washington, D.C. Defendant has an enrollment of approximately 11,000 students.

5. On March 16, 2020, Defendant announced via letter from the University's President Wayne A.I. Frederick, M.D., MBA, that the university was to suspend "face-to-face instruction of courses at Howard University for the remainder of the Spring 2020 Semester and courses will continue to transition to remote and online instruction following the scheduled Spring Break." The letter stated in full:

> Dear Howard University Community,
>
> I am writing to inform you of a need to escalate the university's response to the COVID-19 pandemic. A guest who attended the Howard University Charter Day Dinner has tested positive for COVID-19 (coronavirus). Out of an abundance of caution, we are asking all March 7 dinner participants to monitor and report to your doctor if you begin exhibiting flu-like symptoms. The DC Department of Health is investigating the case, locating and counseling relevant contacts in accordance with the latest national guidance and protocols. We are working closely with the department and have been advised that the chances of contracting the virus are low.
>
> The individual has complied with DC Department of Health's guidance to remain self-isolated. Our direct concern is the recovery and well-being of the affected individual and their loved ones. We will continue to prioritize the most vulnerable among us and do everything we can to safeguard the health and wellness of our university staff, students and surrounding communities.
>
> We have consulted with medical and public-health experts and regrettably, our University leadership has arrived at the conclusion that a return to campus for face-to face instruction will not be possible for the Spring, 2020 semester. To be clear, we are taking the following steps:
>
> We will not return to face-to-face instruction of courses at Howard University for the remainder of the Spring, 2020 semester and courses will continue to transition to remote and online instruction following the scheduled Spring Break. This is an evolution from our earlier statement.
>
> We will close the residence halls on Sunday, March 22 at 11:59 p.m. This is an

evolution from our earlier statement. We are working with our various institutional partners in consideration of any pro-rated refunds of room and board charges. Any potential refund amounts will vary based on application of Federal Aid and Title IV guidelines, current unpaid balances and the specific original room and board charges applicable to each student.

Students who left for destinations other than home for spring break should not return to campus, but instead reach out to the Office of Resident Life to schedule a move out of your room at a later time.

Commencement and All-Class Reunions are canceled. On Sunday, the CDC issued recommendations that for the next 8 weeks, organizers cancel or postpone in-person events that consist of 50 people or more throughout the United States. Although the CDC states that this does not apply to the day to day operations of institutions of higher education, we do not consider commencement a day-to-day operation. Given that Howard's Commencement activities garner crowds of thousands, and the numerous elders and children regularly in attendance, we will cancel the event to avoid the potential for additional virus spread which would be problematic.

This is our best plan of action in order to ensure that this global pandemic does not proliferate the campus community. We have concerns of worsening supply chain disruptions that will decrease our ability to provide services to the students on campus. Additional details will be shared regarding departures from the residence halls, online coursework and other considerations.

We recognize that this development may cause concern among students, staff and the wider community. Over the last four days, there have been significant developments in the ongoing spread of COVID-19:

The World Health Organization has declared the COVID-19 outbreak a global pandemic, with more than 135,000 cases worldwide and more than 3,300 known cases in the United States.

The Federal Government has issued new guidance discouraging any travel of U.S. citizens abroad; instructing all travelers from specified countries in Europe, including U.S. citizens, to self-quarantine for 14-days upon their arrival to the United States; and restricting travel of non-U.S. citizens to the United States from the Schengen Area of Europe.

In Washington, D.C., Mayor Bowser has declared both a state of emergency and a public health emergency and D.C. Department of Health has recommended the canceling of large non-essential gatherings.

I appreciate the continuous patience and understanding that our community has exhibited during this evolving national crisis. As an alumnus myself, I am deeply saddened that our academic season has been disrupted and I apologize for the

inconvenience that these changes have caused. However, the safety of our community is our utmost priority and each hard decision to de-densify the campus is being implemented in an effort to reduce our community's risk to exposure.

We will continue to share relevant updates for our community as the situation unfolds. As you leave campus, please continue to practice social distancing, self-isolate if you are not feeling well, continue checking the university's COVID-19 page for updates and heeding counsel from DC Department of Health and the Centers for Disease Control and Prevention.

Excellence in Truth and Service,

Wayne A. I. Frederick, M.D., MBA

Howard University President

6. Howard University has not held any in-person classes since March 13, 2020. Since that time classes have only been offered in an online format, with no in-person instruction.

7. As a result of the closure of Howard University's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiff and the putative Class members contracted and paid for.

8. Defendant has not refunded any tuition or fees for the Spring 2020 Semester.

9. A petition has been created on-line by Howard University's students to request reimbursement of tuition and fees. *See* https://www.change.org/p/howard-university-administration-partial-tuition-and-fees-housing-and-meal-plan-reimbursement-for-howard-u-students/sign.

10. Plaintiff and the putative Class members are entitled to a refund of tuition and fees for in-person educational services, facilities, access, and/or opportunities that Defendant has not provided.

**PARTIES**

11. Plaintiff was a student at Howard University during the aforementioned events

described herein.

12. Defendant Howard University is a private university with its principal place of business at 2400 6th Street NW, Washington, D.C. 20059.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from the Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

14. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts.

15. This Court has personal jurisdiction over Defendant because Defendant conducts business in Washington, D.C. and has sufficient minimum contacts with Washington, D.C.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Specifically, the contract that is the subject of this action was formed in this District.

## FACTUAL ALLEGATIONS

17. Plaintiff and putative Class members are individuals who paid the cost of tuition and other fees for the Spring, Summer and Fall semesters 2020 at Howard University.

18. For academic year 2019-2020, the undergraduate tuition and fees at Howard University was $27,206.

### 2019-2020 COA – Howard University

|  | On Campus | Off-Campus |
|---|---|---|
| Tuition & Fees | $27,206 | $27,206 |
| Books & Supplies | $1,900 | $1,900 |

|  | **On Campus** | **Off-Campus** |
|---|---|---|
| Room & Board | $14,365 | $0 |
| Other Expenses | $2,500 | $0 |
| **Total Costs** | **$45,971** | **$29,106** |

19. Graduate tuition for the Spring 2020 semester at Howard University varies based on the program. For example, the School of Business charges $17,508 per semester. The School of Law charges $16,028 per semester. The College of Medicine charges $22,627 per semester.

20. Howard University charges mandatory fees for graduate programs. As with tuition, the mandatory fees vary depending on the program.

**Howard University's Course Catalog And In-Person Instruction And Activities**

21. The Course Catalog at Howard University contains multiple representations relating to in-person instruction and activities. Below are just a few examples:

> The Howard University School of Communications offers the following undergraduate degrees:
>
> B.A. Strategic, Legal and Management Communication
> B.A. Media, Journalism and Film
> The 120 credit-hour curriculum of the School:
>
> - Emphasizes digital communication
> - Allows for flexibility in course selection and interdisciplinary exploration
> - Encourages entrepreneurial thinking and exploration
> - ***Provides hands-on experience***
> - Expedites time to degree
> - Incorporates international and intercultural learning opportunities
> - ***Requires internships and other hands-on experiences***
>
> \*   \*   \*
>
> ARTC 122. Ceramics II. 3 crs. An introduction to throwing. Fabrication of clay forms using the pottery wheel. A continuation of glaze calculation, ***hands-on firing techniques***.
>
> \*   \*   \*
>
> ARTE 083. 2D Animation I. 3 crs. ***The hands-on studio course***

***offers*** project-oriented interaction with a multi-plane computer animation system. Students create step-by-step storyboard, image capture, image making, recording and editing.

\* \* \*

HHPL 147. Sports and the Media. 3 crs. Introduction to theory and practice of media forums and their relationship to the sports industry. Designed to give students an operational and technical foundation in research, print, broadcasting, and the impact of advertising and sales on production of a sports event. Guest lecturers from professional media entities, and
***opportunity for hands-on experiences.***

\* \* \*

THAC 211. Acting for Film and TV (I) 3 crs. This course generally taught by a guest artist, is for juniors and seniors only. A professional course which ***provides hands on experience*** in acting techniques for the camera. Prerequisite: Consent of instructor.

\* \* \*

INFO 202. Computer Introduction. 1 cr. The course is an introduction to the elementary and fundamental concepts of modern information systems. The course ***provides hands-on experience with the application of software packages*** commonly used by knowledge workers. Students will develop small applications using Internet tools, databases, spreadsheets, word processing and presentation graphics, and also integrate these application.

\* \* \*

MJFC 300. Co-Curricular Journalism. 1 cr. Students gain supervised, ***hands-on experience*** at one of the following Howard University media outlets: WHUT-TV, Howard University News Service (www.hunewsservice.com), 101 Magazine (www.101Magazine.net), the National Newspaper Publishers Association News Service and the Howard Radio Network. Prereqs: MJFC 201 Multimedia Storytelling.

\* \* \*

MJFC 301. Co-Curricular Audio 1 cr. Students gain supervised, ***hands-on experience*** at one of the following Howard University media outlets, the Howard University Radio Network, including

> but not limited to WHBC 96.3 HD3 and glasshouseradio.com; HUNewsService.com; and 101Magazine.net. Prereqs: none.

> \* \* \*

> MJFC 302. Co-Curricular TV/Film. 1 cr. Students gain supervised, ***hands-on experience*** at one of the following Howard University media outlets: WHUT-TV and the Howard University Radio Network, which includes WHURRadio 96.3 HD1, WHUR-World 96.3 HD2, WHBC 96.3 HD3, glasshouseradio.com, H.U.R. VOICES Sirius XM Channel 141 and HBCU Sirius XM Channel 142. Prereqs: MJFC 220 Media Production II.

22. As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiff and the putative Class members contracted and paid for. Plaintiff and the putative Class members are therefore entitled to a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendant has not provided. Even if Defendant did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

23. Plaintiff and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll on an in-person basis.

24. The online learning options being offered to Howard students are not what Plaintiff and the members of the Class bargained for, including a lack of access to campus facilities, materials, and access to faculty. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

25. Howard University states on its website that it offers an "unmatched campus culture" and an "historic campus community." The tuition and fees for in-person instruction at Howard University are higher than tuition and fees for its own online programs because such costs cover not just the academic instruction, but encompass an entirely different experience which

includes but is not limited to:

      (a)    Face to face interaction with professors, mentors, and peers;

      (b)    Access to facilities such as computer labs, study rooms, laboratories, libraries, etc;

      (c)    Student governance and student unions;

      (d)    Extra-curricular activities, groups, intramurals, etc;

      (e)    Student art, cultures, and other activities;

      (f)    Social development and independence;

      (g)    Life experience of on-campus living and dining;

      (h)    Hands on learning and experimentation; and

      (i)    Networking and mentorship opportunities;

26. Plaintiff seeks, for herself and putative Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained of the Spring 2020, Summer and Fall 2020 Semester when classes moved online and campus services ceased being provided or were curtailed. Plaintiff seeks a refund of these amounts on behalf of herself and the Class as defined below.

## THE CARES ACT ALLOCATION

27. The Federal Government has also responded to the COVID-19 pandemic in ways that benefit Howard University and help Howard University cover the costs associated with the disruption.

28. The CARES Act required that at least half of the funds received by Defendant needed to be spent in the form of emergency aid to students, which could include grants to defray the cost of food, housing, course materials or child care, according to the U.S. Department of

Education. Upon information and belief, however, only half of the money provided to Howard University under the CARES Act will be allocated to the Howard University students.

29. Upon information and belief, as a result of COVID-19, the DOE allocated $8,723,244 to Howard University of which $4,361,622 was allocated to Howard University students.

## CLASS ALLEGATIONS

30. Plaintiff seeks to represent a class defined as all people who paid Howard University tuition and fees for in-person educational services and access to campus facilities for the Spring, Summer and Fall 2020 semesters that Howard University failed to provide, and whose tuition and fees have not been refunded (the "Class"). Excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

31. Subject to additional information which may be obtained through discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

32. **Numerosity**. The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and may be determined through discovery. Class members may

be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

33. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Defendant accepted money from Class members in exchange for the promise to provide services;

(b) whether Defendant has provided the services for which Class members contracted;

(c) whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide;

(d) whether Defendant has unlawfully converted money from Plaintiff, the Class;

(e) whether Defendant is liable to Plaintiff and the Class for unjust enrichment; and

(f) whether Defendant is liable to Plaintiff and the Class for a violation of the District of Columbia Consumer Protection Procedures Act (CPPA) under § 28-3904(a).

34. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein. Further, there are

no defenses available to Defendant that are unique to Plaintiff.

35.     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

36.     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

37.     In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be

dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## DEFENDANT'S PRACTICE IS UNETHICAL AND VIOLATED ESTABLISHED ETHICAL STANDARDS

38. Defendant's practice of failing to provide reimbursements for tuition despite the monetary difference between on-line learning and in-person learning and the reduced benefits received for the mandatory fees collected by Howard University, as alleged herein, violated generally accepted ethical principles of business conduct.

39. The basis for the allegation that it was unethical to engage in the above practices comes, in part, from established ethical principles recognized by the American Marketing Association.

## AMA STATEMENT OF ETHICS

40. The American Marketing Association ("AMA") "commits itself to promoting the highest standard of professional ethical norms and values. . . ." As such, it has published its "Statement of Ethics." *Id.* AMA states that "marketers are expected to embrace the highest professional ethical norms and the ethical values implied by our responsibility toward multiple stakeholders (e.g., customers . . .)." *Id.* Thus, the Statement of Ethics contains "Ethical Norms," which "are established standards of conduct that are expected and maintained by society and/or professional organizations." *Id.*

41. The AMA's Ethical Norms state that marketers must "consciously avoid [] harmful actions and omissions," "striv[e] for good faith and fair dealing," "avoid [] deception in .

. . pricing, communication, and delivery of distribution," and affirm "core values" of honesty, . . . fairness [and] transparency." *Id.*

42.     By not providing appropriate reimbursements to students despite offering an on-line learning (which costs substantially less money and provides a diminished educational experience) Defendant violated these Ethical Norms because, among other reasons, it did not strive (nor achieve) good faith and fair dealing and did not affirm the core values of honesty, fairness and transparency.

43.     The AMA has also published "Ethical Values," which "represent the collective conception of what communities find desirable, important and morally proper." *Id.*  These Ethical Values include honesty and "[h]onoring our explicit and implicit commitments and promises."

44.     By not providing reimbursements to students despite offering a greatly diminished educational experience compared to what they promised, Defendant violated these Ethical Values, because, among other reasons, it did not honor its explicit and implicit commitments and promises.

## FIRST CAUSE OF ACTION

### (Breach Of Contract)

45.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

46.     Plaintiff brings this count on behalf of herself and the putative Class.

47.     Through the admission agreement and payment of tuition and fees, Plaintiff and the putative Class members entered into a binding contract with Defendant.

48.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services.

49.     Defendant has failed to fully provide those services and has otherwise not

performed under the contract as set forth above.

50. Plaintiff and the putative Class members have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to, being deprived of the experience and services to which they were promised and for which they have already paid.

51. As a direct and proximate result of Defendant's breach, Plaintiff and the Class members are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to, reimbursement of certain tuition, fees, and other expenses such as room and board that were collected by Defendant for services that Defendant has failed to fully deliver.

## SECOND CAUSE OF ACTION

### (Unjust Enrichment)

52. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

53. Plaintiff brings this action on behalf of herself and the putative Class.

54. Plaintiff and members of the putative Class conferred a benefit on Defendant by, *inter alia*, paying tuition and other fees such as room and board in exchange for provision of certain services and promises.

55. Defendant has realized this benefit by accepting such payment.

56. Defendant has retained this benefit, even though Defendant has failed to fully provide the services for which the tuition and fees were collected, making Defendant's retention of the full payment unjust under the circumstances.

57. It is against equity and good conscience to allow Defendant to receive the benefit of its decision to reduce the services it is providing to Plaintiff and the other members of the Class and yet retain 100% of the tuition and fees paid to it by Plaintiff and the other members of the

Class.

58.     Defendant has been unjustly enriched in an amount to be decided by the trier of fact at trial, and Plaintiff and the other members of the Class seek the disgorgement of these funds, plus interest.

## THIRD CAUSE OF ACTION

### (Conversion)

59.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

60.     Plaintiff brings this action on behalf of herself and the putative Class.

61.     The two key elements of conversion are (1) Plaintiff's legal ownership or an immediate superior right of possession to a specific identifiable thing, and (2) Defendant's unauthorized dominion over the thing in question or interference with it, to the exclusion of Plaintiff's right.

62.     Plaintiff and other members of the Class have an identifiable legal ownership to the services, access, benefits and/or programs paid for through their tuition and fees.

63.     As set forth above, Defendant has not provided or made available those services, benefits, programs and/or access thereto, to the exclusion of Plaintiff's and other members of the Class's rights.

64.     As set forth above, Plaintiff and other members of the Class have not, to date, received from Defendant a proper reimbursement for tuition and fees paid to Defendant for the Spring, Summer and Fall 2020 semesters.

65.     Defendant has received and retained possession of Plaintiff's and other members of the Class's payments for tuition and fees for the Spring, Summer an Fall 2020 semesters.

66.     Defendant continued possession of these payments for said tuition and fees are adverse and in derogation of Plaintiff's and other members of the Class's entitlement to such funds.

67.     Defendant refuses to remit to Plaintiff and other members of the Class a reimbursement for said tuition and fees paid.

68.     Defendant has therefore converted and continue to convert Plaintiff's and other members of the Class's Spring, Summer and Fall 2020 semesters tuition and fees paid.

### FOURTH CAUSE OF ACTION

### (Violation Of The District Of Columbia Consumer Protection Procedures Act (CPPA) Under § 28-3904(a))

69.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

70.     Plaintiff brings this action on behalf of herself and the putative Class.

71.     Plaintiff need not prove that a merchant (Defendant) intentionally or knowingly represented that the goods or services have a characteristic or were of a standard or quality that they did not, in fact, have.

72.     It is a violation of the CPPA "for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to:"

> (a)     represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

*   *   *

> (d)     represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another.

D.C. Code § 28-3904(a) & (d).

73. To prove a violation of the relevant subsections of the CPPA, Plaintiff must prove a misrepresentation or omission of a material fact that has a "tendency" or "tends to" mislead. D.C. Code § 28-3904(e)-(f). Plaintiff **need not prove reliance**, since Plaintiff need not prove that the misrepresentation misled or deceived the consumer. § 28-3904. Nor need Plaintiff prove an intent to deceive. Given the elements of the CPPA, Rule 9(b)'s requirements do not apply. *Dahlgren v. Audiovox Communications Corp.*, 2010 D.C. Super. LEXIS 9, at *26 (July 8, 2010).

74. The CPPA defines a merchant as a person who,

> [I]n the ordinary course of business, does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who in the ordinary course of business does or would supply the goods or services which are or would be the subject matter of a trade practice.

D.C. Code § 28-3901(a)(3).

75. A "merchant" is not limited to the direct supplier of goods or services to consumers, but includes any person connected with the supply-side of a consumer transaction. *See, e.g.*, *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. 1989).

76. Defendant is a merchant under terms of the CPPA.

77. Defendant offered for sale and sold Plaintiff and the Class services in the District of Columbia. Defendant Howard University is "connected with the supply-side of a consumer transaction" and may be held liable for its participation in its unlawful conduct while it acted as a merchant.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

(A) Certifying the Class as proposed herein,

(B) Designating Plaintiff as Class representative, and appointing Gainey

McKenna & Egleston as Class Counsel;

(C) Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

(D) Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

(E) Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

(F) Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

(G) Scheduling a trial by jury in this action;

(H) Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

(I) Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

(J) Awarding such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 7, 2020

**LEVI & KORSINSKY LLP**

By: */s/ Elizabeth K. Tripodi*
Elizabeth K. Tripodi (D.C. Bar No. 99154)
1101 30th Street NW
Suite 115
Washington, DC 20007
Tel: (202) 524-4290 x2

Fax: (202) 333-2121
Email: etripodi@zlk.com


**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel.: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*